Todd Shea
Shea Law Firm, PLLC
225 East Mendenhall
Bozeman, MT 59715
Telephone: (406) 587.3950
Facsimile: (406) 587-9752
Email: toddshea@shealawoffice.net

*Attorney for Lila Masters*


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION


| | |
|---|---|
| BALANCE POINT DIVORCE FUNDING, LLC, a Nevada Limited Liability Company, on Behalf of itself and as the Managing member of BALANCE POINT FUNDING NUMBER I, LLC, | ) CAUSE NO. CV-12-40-BU-SEH )<br>)<br>)<br>)<br>)<br>)<br>) |
| | ) |
| Plaintiffs, | ) LILA MASTERS' REPLY |
| | ) IN SUPPORT OF |
| v. | ) MOTION FOR SUMMARY |
| | ) JUDGMENT TO DECLARE |
| | ) CONTRACTS VOID AS |
| LILA MASTERS, | ) A MATTER OF LAW |
| Counterclaimant, Third-Party Plaintiff and Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHN DOES 1-5, | ) |
| and JANE DOES, 1-5, | ) |
| Defendants, | ) |

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts
Void as a Matter of Law
Page 1 of 19

|                                        |     |
| -------------------------------------- | --- |
|                                        | )   |
| v.                                     | )   |
|                                        | )   |
| STACEY NAPP, Third-Party               | )   |
| Defendant, and John Does 1-5.          | )   |

## INTRODUCTION

Lila Masters respectfully submits this brief in reply to the Plaintiffs' (hereinafter, Balance Point) response to Ms. Masters' Motion to Declare Balance Point's Funding Document Void.

Balance Point's response brief ignored many of the public policies cited by Ms. Masters, and simply rewrote other arguments set forth by Ms. Masters.  As to the case law offered by Balance Point, it does not begin to address the Montana public policies at stake or the black letter law requiring the dismissal of all claims if the Court finds the Funding Document void.  Further, instead of addressing the public policies at issue, Balance Point's response sets forth a personal attack on Ms. Masters which, ironically, confirms the public policy reasons to void the Funding Document.

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts Void as a Matter of Law
Page 2 of 19

I.    Balance Point Ignored Montana's Public Policies And Statutes Cited By Ms. Masters.

Balance Point ignored perhaps the most significant and applicable public policy at issue: "the promotion of the amicable settlement of marital disputes." MCA §40-4-101. (Dkt. 145, p. 21.) In the process, Balance Point ignored the 4 lawsuits that it has described as an "outgrowth" of its involvement in the divorce proceeding between Ms. Masters and Tim Scrantom.   (Dkt. 156, p. 17.)   One of the 4 outgrowth lawsuits is this suit wherein Balance Point has asserted an almost incomprehensible breach of contract claim because Ms. Masters allegedly "repeatedly refused to cooperate with [Balance Point] in the prosecution of her marital asset claims…."   (Dkt. 92, ¶ 47; emphasis added.)   It is respectfully submitted that Balance Point has not offered any explanation as to how the 4 outgrowth lawsuits do not violate public policy because there are no such explanations, and further, that the outgrowth lawsuits are enough in and of themselves to declare the Funding Document void.

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts Void as a Matter of Law
Page 3 of 19

Balance Point also ignored a related purpose of the Montana family law statutes: to "mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage." M.C.A. §40-1-101.  The outgrowth lawsuits have and will continue to annihilate this salutary purpose. Among other things, Ms. Masters is the named defendant in a 95 page sanction motion replete with 38 exhibits filed by Mr. Scrantom based on Balance Point's previously intentionally undisclosed involvement in, and interference with, the divorce action, and Mr. Scrantom and his prior company (Juridica) are being sued in Federal Court in New York by Balance Point for Mr. Scrantom's allegedly interfering with Balance Point's "investment" in the marital estate.   (Aff. ¶ 2.)

Balance Point also ignored MCA §28-2-706, which provides that, "[e]very contract in restraint of the marriage of any person other than a minor is void." (Emphasis added.)   Further, Balance Point ignored MCA §28-2-603, which provides that if a contract has a single object that is unlawful, whether in whole or in part, the "entire contract" is void.

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts
Void as a Matter of Law
Page 4 of 19

## II.   Instead Of Responding To A Number Of Ms. Masters' Clear Arguments, Balance Point Rewrote The Arguments.

Balance Point has rewritten a number of Ms. Masters' arguments including that the Funding Document should be void because payment, was, in its own words, "determined by the relative success or failure of prosecuting Masters' marital asset claims." (Dkt. 78, ¶ 44.)  Balance Point has rewritten the argument to state that the Funding Document should not be void because payment was not "contingent on whether a divorce was granted."  (Dkt. 182, p. 11.)

In defending Ms. Masters' rewritten argument, Balance Point also incorrectly contends that Montana has only prohibited contingency agreements that are dependent upon the granting of a divorce.   (Dkt. 182, p. 4.)   *Coleman v. Sisson,* 71 Mont. 435, 230 P. 582 (1924), cited in Ms. Masters' motion, goes further than this:

> This contract, entered into while a divorce action was pending, providing for an attorney's fee contingent upon the amount of alimony awarded the wife in the action, is void as against public policy…. Contracts like the one before us, when the attorney is to receive a portion of the money or property obtained from the husband, necessarily tend toward the alienation of husband and wife.   The attorney is interested, not in reconciliation, but in alienation.   His cupidity serves to direct his action.

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts Void as a Matter of Law
Page 5 of 19

Similarly, Rule 1.5 of the Montana Rules of Professional Conduct, also cited in Ms. Masters' motion, prohibits a lawyer from entering into an arrangement for a fee "contingent upon the securing of a divorce <u>or upon the amount of maintenance or support or property settlement</u>…" (Emphasis added.)   (Dkt. 145, p. 24.)

In defending Ms. Masters' rewritten argument, Balance Point also takes a diametrically opposed position from one it recently asserted to this Court.    In contending that its payment was not contingent on whether a divorce was granted, Balance Point states that its "obligation of payment was certain…"  (Dkt. 182, p. 5.)  This contradicts its argument as to why the Funding Document is not a loan inasmuch as it defended this claim by stating that, "the agreements do not contain an unconditional obligation to pay back the money advanced by Balance Point."  (Dkt. 182, p. 5, Dkt. 152, p. 24.)    Balance Point's diametrically opposed arguments reveal the indefensible illegal nature of the Funding Document and should be not be countenanced by the Court.  See *Dovey v. BNSF Railway Co.*, 2008 MT 350, 346 Mont. 305, 195 P.3d 1223.

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts Void as a Matter of Law
Page 6 of 19

Also, Balance Point rewrote Ms. Masters' argument based on cases outside of Montana concerning litigation funders being prohibited from exercising "any control" or "intermeddling" in the litigation by arguing that the issue is whether the funder "controlled" the litigation.   (Dkt. 182, p. 17-18.)    No Court applies such a test.

III.    Ms. Napp's Unauthorized Practice Of Law Is An Independent Reason To Void The Funding Document, And The Unauthorized Practice Of Law Has Repeatedly Been Established.

Ms. Napp's unauthorized practice of law was an "independent reason" offered by Ms. Masters to void the Funding Document.  (Dkt. 145, p 29.)   Leaving this aside, Ms. Napp's own documents, emails, and declarations remove any question that Ms. Napp engaged in the unauthorized practice of law.   See for example, Ms. Napp's directing counsel to include factual and legal arguments in briefs, drafting deposition questions, and subpoena requests. (Dkt. 145, pp. 12-14.)

Also, Ms. Napp's justification that the "alternative was to have the work done by either Waterman (he did not have a paralegal) or Parker's paralegal at a rate of $250 per hour []" confirms her unauthorized practice of law. (Dkt. 145, p. 15.)   Further, Ms. Napp's

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts Void as a Matter of Law
Page 7 of 19

signed "Consulting Agreement" provided that she "will <u>render advice,</u> assistance, <u>consultation</u> and expert opinion" to both law firms "<u>in connection</u>" with the "<u>representation</u> of" Ms. Masters. (Dkt. 145, p.11, emphasis added.)   Also, Ms. Napp's signed "Joint Interest/Joint Defense/Joint Prosecution Agreement" provided for, among other things, the "sharing of <u>thoughts, analysis</u>, and impressions of the parties and their counsel and <u>coordination of law and motion</u> efforts []" between Ms. Masters and Ms. Napp.  (Dkt. 145, p. 11.) Tellingly, Balance Point's response brief did not mention these agreements.

As to Ms. Napp's argument that she was a paralegal under the "supervision of authorized attorneys", this fails for a number of reasons. (Dkt. 182, p. 29.)  First, aside from Ms. Napp's after-the-fact self-serving declaration, no supporting documentation has been provided, nor has Mr. Parker or Mr. Waterman, or anyone from their respective firms, attested to their alleged supervision.   Second, an attorney suspended by any jurisdiction such as Ms. Napp (Dkt. 78, p. 4) cannot act as a paralegal in Montana pursuant to M.C.A. § 25-10-305(2)(e).

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts
Void as a Matter of Law
Page 8 of 19

Further, Balance Point's reliance on *Foss v. Berlin,* 443 N.E. 2d. 197 (Ohio App. 1981) supports Ms. Masters' position.   *Foss* noted that the underlying contract drafted by a real estate broker would deprive him of his commission if the subject matter of the contract was illegal (which it wasn't), or if the broker "sought to profit from the unauthorized practice itself" (which he didn't).  In this case, the Funding Document is illegal, and there is no dispute that Ms. Napp sought to profit from her unauthorized practice of law given her charging Ms. Masters' litigation budget for her review and analysis of Mr. Scrantom's discovery documents (produced under a Confidentiality Order in the divorce litigation) and seeking a 25 to 37% return on Balance Point's investment that Ms. Napp was admittedly "substantively involved" in providing "strategy" and "consultation" on.   (Dkt. 182, p. 18.)

IV.   <u>Balance Point's Attempts To Blame Ms. Masters For Ms. Napp's Unauthorized Practice Of Law And Unwarranted Intrusion In The Litigation Should Be Disregarded.</u>

An implicit thread to Ms. Napp's defense to the unauthorized practice of law along with her unwarranted intrusion in the divorce

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts Void as a Matter of Law
Page 9 of 19

litigation appears to be that Ms. Masters allegedly asked for Ms. Napp's involvement.    Assuming *arguendo* this is accurate, Balance Point has provided no authority that this somehow condones Ms. Napp's unauthorized practice of law, or addresses the multiple public policy violations resulting from Ms. Napp's unwarranted intrusion in the litigation.    Indeed, all licensing regulations and Montana's law prohibiting a third-party's unwarranted intrusion in a litigation set forth in *In Re Rules of Professional Conduct and Insurer Imposed Billing Rules and Procedures,* 2000 MT 110, 299 Mont. 321, 2 P.3d 806 would be meaningless if the person could defend the violation by claiming that the litigant requested the advice or unwarranted intrusion.

Moreover, Balance Point's pleadings contradict its defense of blaming Ms. Masters for its involvement as it has claimed that it "had a contractual right to actively participate in the divorce strategy" because of its substantial "investment" and purported "partnership." (Dkt. 145, p. 16.)   Also, Balance Point "leaves it up to the client regarding how much involvement [Balance Point] has in the divorce

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts Void as a Matter of Law
Page 10 of 19

[]" and it determined that Ms. Masters "was particularly needy."[1] (Dkt. 184,¶ 4.)

Further, Balance Point's reliance on *Finlen v. Heinze*, 73 P. 123 (Mont. 1903) is misplaced for multiple reasons including the critical fact that it did not involve a divorce and all of its attendant public policy concerns.    Further, unlike the assignor in *Finlen,* Balance Point did not prosecute Ms. Masters' claims openly before the Court but instead attempted to secretly orchestrate Ms. Masters' divorce behind the scenes, and its interests conflicted with Ms. Masters' interests.

V.      Balance   Point's   Omnipotent   Pronouncements   About Reconciliation Should Be Disregarded.

Balance Point omnipotently declares that reconciliation "was not a possibility in the Masters/Scrantom divorce." (Dkt. 184, ¶ 27.) Balance Point, nor anyone else, can make such a pronouncement given the myriad reasons why couples reconcile. However, it can be said that Balance Point's admitted "aggressive" approach to the

---

[1] Ms. Napp also claims that Ms. Masters was "incapable of firmly communicating her desires and directions to counsel." (Dkt. 184, p. 3.) If this were truly the case, there are required procedures relating to a non-client interfacing with the attorney. See MCA § 72-5-320 concerning a limited guardianship to "assert and protect the rights and best interests of the party."

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts Void as a Matter of Law
Page 11 of 19

divorce and its infusion and exhaustion of over $300,000 into the divorce in three months did nothing to enhance any prospect of reconciliation.

Also, Balance Point's pronouncement about reconciliation ignores Ms. Masters' testimony that she "had appeals to" Mr. Scrantom to reconcile and "on some level" she wanted to save the marriage and the family.   (Affidavit of T. Carpitcher, Ex. 1, Dep. p. 8.)

Also, Balance Point's reliance on *Pospisil v. First National Bank of Lewistown,* 2001 MT 286, 307 Mont. 392, 37 P.3d 704 for its contention that not all contracts negatively impacting reconciliation will be deemed void is at best, strained.   *Pospisil* had nothing to do with reconciliation or voiding a contract.  Instead, it merely involved a husband's sanctionable claim against the defendant bank for recording a mortgage on  a portion of the divorced couple's ranch (that only the wife had a legal interest in) after the bank loaned money to the wife for living expenses during the dissolution proceeding.

As to *Schultz v. Fox*, 345 P.2d 1045 (Mont. 1959), this case hardly stands for what Balance Point contends.   It merely held that

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts
Void as a Matter of Law
Page 12 of 19

where there was sufficient consideration for the underlying note and mortgage entered into between the divorcing parties as part of their settlement, and because the divorce was not procured by fraud, the note and mortgage were valid.

VI.    Balance Point's Arguments To Pursue Its Damage Claims In The Event The Funding Document Is Void Ignore Clear And Longstanding Montana Law.

Balance Point claims that the *in pari delicto* doctrine "should not apply" and therefore it should be permitted to proceed with its damage claims.  (Dkt. 182, p. 31-32.)  However, Ms. Masters did not rely on this doctrine in arguing that the Funding Document is void and, if declared void, all parties' claims are to be dismissed pursuant to longstanding and unequivocal Montana law.   Also, Balance Point's reliance on the *in pari delicto* doctrine to somehow allow it to proceed with its damage claims if the Funding Document is void (but not allow Ms. Masters' to pursue her damage claims), patently conflates two separate legal concepts.

In *Waller v. Engelke,* 741 P.2d 385 (Mont. 1987), relied on by Balance Point, the Court permitted a personal injury plaintiff to pursue

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts Void as a Matter of Law
Page 13 of 19

damages notwithstanding the plaintiff's violation of the law.  *Waller,* did not involve a contract between the parties, let alone a void contract, and hence is not applicable.   Moreover, *Waller* did not mention, let alone overrule, the long line of Montana cases beginning with *Glass v. Basin & Bay State Min. Co.,* 31 Mont. 21, 77 P. 302 (1904), holding that "no principle of law is better settled than that a party to an illegal contract" will not be aided by the Court.  Further, the cases relied on by Ms. Masters – *Portable Embryonics, Inc., v. J.P. Genetics, Inc.,* 248 Mont. 242, 810 P.2d 1197 (1991) and *MPH Co. v. Imagineering, Inc.,* 1990, 243 Mont. 342, 792 P.2d 1081*.* – which were decided after *Waller,* made no mention of *Waller* or the *in pari delicto* doctrine.  Indeed, if this Court were to accept Balance Point's argument that the *in pari delicto* doctrine should not bar its damage claims, *Glass, Portable Embryonics,*  and *MPH Co.* along with other Montana cases standing for the same clear principle would need to be overruled.  See *McPartlin v. Fransen,* 199 Mont. 143, 648 P.2d 729 (1982), relying upon multiple earlier Montana cases in holding that once the parties' contract was void, the down payment,

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts
Void as a Matter of Law
Page 14 of 19

monies collected, and unpaid rent, all of which were called for under the void contract, were left alone by the Court.

Also, Balance Point is now irrelevantly contending that if the Funding Document violates Montana law, it "was unaware of it at the time" given that it "received advice" from Karl Knuchel that it did not violate Montana law. [2] (Dkt. 182, pp. 3-4.) Balance Point claims, without any supporting Montana law, that this should somehow allow it to pursue its damage claims arising out of the Funding Document against Ms. Masters.  Balance Point has never asserted the advice of counsel as a defense.  Moreover, in discovery Ms. Masters requested a copy of Mr. Knuchel's letter if Balance Point intended to rely on Mr. Knuchel's advice, but it refused to produce the letter claiming it was privileged. (Aff. Ex. 3.) Balance Point cannot have it both ways; claim Mr. Knuchel's letter is privileged but then claim at the summary judgment stage that it is relying on the letter.

---

[2] This position is difficult to reconcile with, among other things, Balance Point's requirement that Ms. Masters indemnify it if she ever challenged whether the Funding Document was unenforceable and its insistence of retaining her own counsel to rubber stamp the validity of it. Ms. Masters' counsel (Ryan Jackson) however did not rubber stamp the Funding Document as he did not sign and return Balance Point's form document stating that he was unaware of whether it violated Montana Law.

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts Void as a Matter of Law
Page 15 of 19

Moreover, Balance Point's alleged reliance on Mr. Waterman's signing a form document that he was unaware of whether the Funding Document violated Montana is irrelevant, and also ignores the evidence.   Mr. Waterman "believes" he spent "about 15 or 20 minutes looking generally at the contract provisions within the statute" before signing the document. (Ex. 2, Dep, p. 122.)   Mr. Waterman also testified that "Balance Point purchased an interest in the outcome and that could be somewhat contingent because you don't know what it is. So [the Funding Document] was – it had that gray approach to it." (Ex. 2, dep. p.165.)    Also, Balance Point does not mention that Mr. Waterman was to be paid by it after he signed its form document and this was the first time he was ever paid in the divorce proceeding. (Ex. 2, Dep. pp. 20-21.)

VII.    Balance Point Ignores The Merits Of The Legal Article Cited By Ms. Masters And Balance Point Has Not Pointed  To Any Supportive Articles.

As to the legal article critical of funding in divorce matters and the author's reliance on Balance Point's business model as the extreme example of an entity interfering too much with the litigation

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts Void as a Matter of Law
Page 16 of 19

and the lawyers' independence, Balance Point avoids the merits of the article. Instead, it sarcastically calls the article a "resume stuffer" and maligns the author's experience and points to his age as a reason to disregard the article. (Dkt. 182, p. 19-20.) Moreover, Balance Point has not pointed to <u>any</u> articles remotely supportive of litigation funding in divorce cases overall, not to mention when the funder is admittedly "substantively involved" in the litigation.

VIII. <u>Ms. Napp's Latest Declaration Confirms Why The Funding Document Should Be Void.</u>

Finally, Ms. Napp's latest declaration confirms why the Funding Document should be void. After being pervasively involved in the divorce proceeding for an intensive 3 month period and exhausting over $300,000 in the divorce in that period, Ms. Napp chose to stop any further funding because Ms. Masters was "untruthful", "downright uncooperative" with her attorneys, and Ms. Napp's "fiduciary obligations to" (Balance Point's financial partner) dictated that she not seek any further funding. (Dkt. 184, ¶ 32.)

Ms. Masters disputes Ms. Napp's characterizations of her, but assuming *arguendo* that they are true for purposes of this motion, Ms.

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts
Void as a Matter of Law
Page 17 of 19

Napp's declaration confirms that Ms. Masters' divorce was never more than an economic wager for Balance Point, it was never truly Ms. Masters' "partner", and its interests were certainly not "precisely aligned" with Ms. Masters' interests.   (Dkt. 145, p. 4.) Ms. Napp's latest professed reasons to stop Balance Point's funding and involvement in the divorce on the eve of trial confirm that it should never have been substantively involved in the divorce in the first place.

## **CONCLUSION**

Lila Masters respectfully requests that this Court declare the Funding Document void, and dismiss all claims.

Respectfully submitted this 2nd day of August, 2013.


/s/ Todd Shea
Todd Shea
Attorney for Lila Masters


*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts Void as a Matter of Law
Page 18 of 19

CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of August, 2013, a copy of the foregoing document was served upon the following by:

| | |
|---|---|
| Charles E. Hansberry | [ ] U.S. Mail |
| Jeffrey Roth | [ ] Fax |
| Garlington, Lohn, Robinson | [ ] Express Mail |
| PO Box 7909 | [xxxx] *CMIECF* filing |
| Missoula, MT 59807-7909 | [ ] Federal Express |

/s/ Todd Shea
Todd Shea
Attorney for Lila Masters


**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Motion is double-spaced, is in 14 point type, and contains 2,968 words, excluding caption, signature, certificate of service, and compliance.

Dated this 2nd day of August, 2013.

/s/ Todd Shea
Todd Shea

*Balance Point Divorce Funding, LLC v. Lila Masters, et al.*
Lila Masters' Reply in Support of Motion for Summary Judgment to Declare Contracts Void as a Matter of Law
Page 19 of 19